UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

OPTHALMIC IMAGING SYSTEMS,
a California corporation,

                                 NO. CIV. S-04-482 LKK/DAD

    Plaintiff,

 v.                                     O R D E R

MARK FUKUHARA, an individual;
DOUGLAS BURLAND, an individual;
MICHAEL GERKOVICH, an individual;
STEVEN LEACH, an individual;
EDMUND PETERSON, an individual;
DAN SALOMON, an individual; JOE
SILVA, an individual; DALE BRODSKY,
an individual; EYEPICTURES, INC., a
Missouri corporation; JUSTICE
OPTHALMICS, INC., a Tennessee
corporation; ZETA DEVELOPMENT LABS,
INC., a Tennessee corporation; and
JOHNNY JUSTICE, JR., an individual,

    Defendants.
                                   /

////

////

////

1

**I.**

**BACKGROUND**

The court has set out the relevant facts in this case multiple times before. Suffice it to say that OIS, a corporation with its principal headquarters and place of business in Sacramento, California, manufactures digital ophthalmic imaging systems in the United States, which integrate "fundus cameras" – specially designed cameras used to photograph the human eye – with computer hardware, digital cameras, optical and electronic interfaces, and specially designed software to create state-of-the-art digital images of the eye for diagnostic purposes. OIS asserts that a crucial source of its value and profitability lies in its trade secrets, which consist primarily of customer lists, manufacturing and design know-how, vendor information, and servicing know-how. In order to preserve the confidentiality of its trade secrets, OIS requires all employees to sign confidentiality agreements which prohibit OIS employees from disclosing OIS' trade secrets during and after their employment.

In January 2002, defendant Mark Fukuhara, then the Vice President of Operations of OIS, was terminated and left OIS. Over the next year several more employees, including Michael Gerkovich, left OIS to join Fukuhara in a new business. By late spring of 2002, OIS allegedly learned from a few of its customers that these former employees ("defendant employees") had formed a new business called Imaging Service Group, and that

2

their business, at least in part, was providing service for customers of OIS' imaging systems. The business was owned principally by defendants Dale Brodsky, Gerkovich, and another shareholder. OIS claims that Gerkovich solicited the business of OIS customers who were seeking service for their OIS imaging systems, and directed these customers to defendants' new business enterprise.

In the spring of 2003, OIS allegedly became aware that some part of defendant employees' business had been acquired by entities under the control of defendant Johnny Justice, Jr., ("Justice") a resident of the state of Tennessee and one of the most prominent ophthalmic imaging specialists in the United States. Justice is the 100% shareholder of defendant Zeta Development Labs, Inc. ("Zeta"), a Tennessee Corporation. Zeta also does business under the Justice Diagnostic Imaging, Inc. name. OIS alleges that Justice, and another company he owns, Justice Ophthalmics, Inc. (JOI) were placed on notice of OIS' concern that the defendant employees were misappropriating OIS' trade secrets and confidential information in 2003.

**A.  FACTS RELEVANT TO THE PENDING MOTION**

In October 2005, OIS and defendant Zeta Development Labs, Inc. ("Zeta") entered into settlement negotiations. Plaintiff submits that during the course of those negotiations, OIS was told that Zeta's chief executive officer (Johnny Justice, Jr.) had material information about the other defendants. This new information pertained to a Saturday morning raid on OIS' office

3

1  by two defendants.  Specifically, Mr. Justice informed plaintiff
2  that he had been told by a Zeta employee, (and former defendant
3  in this case), Michael Gerkovich that he, Gerkovich, had
4  received delivery of certain equipment in March of 2002 and that
5  Gerkovich was told by defendant Burland and former OIS employee
6  Matt Jolly, that the equipment had been stolen from OIS on a
7  Saturday by Burland and Jolly after they gained unlawful access
8  to OIS' premises.  See Mot. to Amend at 3:20-25.
9      OIS later obtained a statement and deposition from
10 Gerkovich himself confirming this account.  According to
11 Gerkovich, Jolly and Burland told him that in March of 2002,
12 they gained access to OIS through the unauthorized use of an
13 entry card and the passcode of another employee.  They told
14 Gerkovich that they went inside OIS, climbed a fence to get to a
15 back room, and took several OIS parts, including sync boxes,
16 video adapters, cables, and other parts.  According to
17 Gerkovich, he met defendants Burland, Fukuhara, and Brodsky, and
18 former employee Matt Jolly, at a restaurant in Cape Girardeau,
19 Missouri, and during the meal Burland and Jolly talked about the
20 theft in front of Brodsky.  See Pl.'s Mot. to Amend at 4:1-11.
21 The motion to amend pertains to this newly acquired information.

## II.

### STANDARDS

24    Because the court has filed a pretrial scheduling order,
25 Federal Rule of Civil Procedure 16 governs the procedure for
26 amending the pleadings.  Rule 16 provides in part:

4

```
        (b) [The district court] . . . shall, after consulting
        with the attorneys for the parties and any
        unrepresented parties, by a scheduling conference, ...
        enter a scheduling order that limits the time, (1) to
        join other parties and to amend the pleadings; (2) to
        file and hear motions; and (3) to complete discovery.
```

Fed. R. Civ. P. 16(b) (2005); Johnson v. Mammoth Recreations, Inc., 975 F.3d 604 (9th Cir. 1992).

Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment.

The district court is given broad discretion under Rule 16. Johnson, 975 F.2d at 607. See also United States v. Marshall, 532 F.2d 1279, 1284 (9th Cir. 1976) ("In interpreting this rule, courts have held that the granting of a discovery motion within Rule 16(b) is a matter within the trial court's discretion which will not be disturbed on appeal unless there was a clear abuse of discretion.")

The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment); Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J. 1990); Amcast Indus. Corp. v. Detrex Corp., 132 F.R.D. 213, 217 (N.D. Ind. 1990); 6A Wright, Miller & Kane, Federal Practice and Procedure § 1522.1 at 231 (2d ed. 1990) ("good cause" means scheduling

deadlines cannot be met despite party's diligence).

Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. <u>Cf</u>. <u>Engleson v. Burlington Northern R.R. Co.</u>, 972 F.2d 1038, 1043 (9th Cir. 1992) (carelessness not a ground for relief under Rule 60(b)); <u>Martella v. Marine Cooks & Stewards Union</u>, 448 F.2d 729, 730 (9th Cir. 1971) (same), <u>cert. denied</u>, 405 U.S. 974 (1972). Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. <u>See</u> <u>Gestetner Corp. v. Case Equip. Co.</u>, 108 F.R.D. 138, 141 (D.Me. 1985). If the moving party was not diligent, the inquiry should end.

Finally, if the trial court determines that refusal to allow a modification of the pretrial order could result in injustice, while allowing the modification would cause no substantial injury to the opponent and no more than a slight inconvenience to the court, modification is appropriate. <u>United States v. First Nat. Bank of Circle</u>, 652 F.2d 882 (9th Cir. 1981).

**III.**

**ANALYSIS**

In interpreting the "good cause" requirement under Fed. R. Civ. P. 16(b), the court considers, primarily, "the diligence of the party seeking the amendment." <u>Johnson v. Mammoth Recreations</u>, Inc., 975 F.2d 604, 609 (9th Cir. 1992). As a

6

secondary consideration, the court considers the degree of prejudice to the opposing party.  Id.

**A.   DILIGENCE**

Plaintiff's motion to amend was prompted by information that it received in the fall of 2005.  Spesifically, plaintiff learned that property had been stolen from OIS' facility in March of 2002.  Plaintiff explains that prior to its conversation with Mr. Justice in the fall of 2005, "OIS had been completely unaware of this theft, despite previously having taken the depositions of Fukuhara, Burland, Gerkovich, and Justice."  Pl.'s Mot. to Amend at 3:26-28.  This information offered new evidence for a claim conversion against defendants Burland, Fukuhara, Brodsky and Eyepictures, Inc.

Under California state law, conversion is the wrongful exercise of dominion over the property of another.  The elements of conversion are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.  Burlesci v. Petersen, 68 Cal.App.4th 1062, 1066 (1st Dist. 1998).

Prior to obtaining the information about the raid, plaintiff could not have asserted in good faith a claim for conversion.  Plaintiff's diligence is also apparent in that prior to the fall of 2005, plaintiff had deposed defendants Burland and Gerkovich and neither defendant told plaintiff about the raid.  Plaintiff did not learn of the raid until it entered

1  settlement negotiations with Zeta and spoke to Mr. Justice.
2  Based on these facts, it is clear that plaintiff was diligent.
3      Defendants' primary objection is that amending the
4  complaint would be futile.  Specifically, defendants maintain
5  that a claim for conversion would be barred by the statute of
6  limitations and the relation-back doctrine would not apply.  <u>See</u>
7  Defs.' Opp'n to Mot. to Amend at 6.  The court cannot agree.
8      Even if the statute of limitations has expired, the
9  relation-back doctrine does apply in a case such as this.
10 Under Fed. R. Civ. P. 15(c), whenever the claim asserted in the
11 amended pleading arises out of "the conduct, transaction, or
12 occurrence set forth or attempted to be set forth in the
13 original pleading, the amendment relates back to the date of the
14 original pleading."  Fed. R. Civ. P. 15(c).  Moreover,

> Amendments seeking to add claims are to be granted
> more freely than amendments adding parties. 'When a
> suit is filed in a federal court under the [Federal
> Rules of Civil Procedure], the defendant knows that
> the whole transaction described in it will be fully
> sifted, by amendment if need be, and that the form of
> the action or the relief prayed or the law relied on
> will not be confined to their first statement.'

20 <u>Union Pacific R. Co. v. Nevada Power Co.</u>, 950 F.2d 1429, 1432
21 (9th Cir. 1991) (internal citations omitted).  In the case at
22 bar, the proposed amendment does relate direclty to the conduct,
23 transactions, and occurrences that are detailed in the initial
24 complaint.  Namely, the allegation of conversion is very much
25 related to the broad set of facts that gave rise to the
26 allegations copyright infringement, false advertising, violation

8

1  of the Computer Fraud and Abuse Act, breach of contract,
2  misappropriation of trade secrets, and interference with
3  contracts.  For this reason, the court finds that the relation-
4  back doctrine would ensure that the amendment would not be
5  barred by the statute of limitations.

**B.     POTENTIAL PREJUDICE TO DEFENDANTS**

Defendants maintain that they would be prejudiced by the amendment as they plan to deny the allegations asserted in Gerkovich's statement and that they would like the opportunity to depose Mr. Jolly on the issue of why he did not reveal this incident either to plaintiff, when signing his affidavit, or at the time of his deposition.  See Defs.' Opp'n to Mot. to Amend at 5:14-25.  The court does not see how these arguments constitute prejudice.

Plaintiff asserts, and defendants do not dispute, that Gerkovich has already been deposed by defendants on the express topic of the OIS theft.  All the other witnesses have been deposed by defendants and can be subpoenaed at trial. Furthermore, plaintiff states that it "does not expect to offer any physical or documentary evidence relating to the conversion claim, other than a price list of equipment that was likely stolen, which will be produced prior to the anticipated deposition of Gil Allon."  Mot. to Amend at 7:24-48.[1]

////

---

[1] Gil Allen, plaintiff maintains, can provide information about the value of the items that were allegedly stolen.

9

1     Defendants fail to put forth any persuasive reasons for not
2 granting the motion to amend.  This is especially true in light
3 of the fact that "Rule 16(b)'s 'good cause' standard primarily
4 considers the diligence of the party seeking the amendment."
5 Johnson, 975 F.2d at 609.  Given that plaintiff has met the
6 diligence standard discussed above, any considerations regarding
7 the possible prejudice to defendants is outweighed.

## IV.

## ORDERS

For the foregoing reasons, the court hereby ORDERS that:

    1.  Plaintiff's motion to amend is GRANTED; and

    2.  The Clerk is directed to FILE the proposed second amended complaint received on January 11, 2006; and

    3.  The matter is SET for a Status Conference on February 6, 2006 at 1:30 p.m.  The Pretrial Conference set for that date and time is VACATED.

    IT IS SO ORDERED.

    DATED:  January 25, 2006.

                                /s/Lawrence K. Karlton
                                LAWRENCE K. KARLTON
                                SENIOR JUDGE
                                UNITED STATES DISTRICT COURT